UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

JAMES CASSIDY,                       )
                                     )
           Plaintiff,                )
                                     )
      v.                             )    No. 4:05 CV 980 DDN
                                     )
JO ANNE B. BARNHART,                 )
Commissioner of                      )
Social Security,                     )
                                     )
           Defendant.                )

**MEMORANDUM**

This action is before the court for judicial review of the final decision of the defendant Commissioner of Social Security denying the application of plaintiff James Cassidy for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401 et seq., and supplemental security income under Title XVI of the Act, 42 U.S.C. §§ 1381 et seq. (Doc. 1.) The parties have consented to the authority of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Doc. 7.)

**1. Background**

On August 29, 2003, plaintiff applied for disability benefits. He alleged he became disabled on November 30, 2002, at age 51, on account of conditions that include generalized pain, bad blood circulation, otosclerosis, degenerative arthritis, and chronic ear infections. (Tr. 64, 68-76.)

Following an evidentiary hearing, on January 11, 2005, an administrative law judge (ALJ) denied benefits. (Tr. 12-20.) Because the Appeals Council denied review of the ALJ's decision, it became the final decision of the Commissioner for review in this action.

**2. General Legal Principles**

The court's role on review is to determine whether the Commissioner's findings are supported by substantial evidence in the record as a whole. Pelkey v. Barnhart, 433 F.3d 575, 577 (8th Cir. 2006).

"Substantial evidence is relevant evidence that a reasonable mind would accept as adequate to support the Commissioner's conclusion." Id. In determining whether the evidence is substantial, the court considers evidence that detracts from, as well as supports, the Commissioner's decision. See Prosch v. Apfel, 201 F.3d 1010, 1012 (8th Cir. 2000). So long as substantial evidence supports that decision, the court may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome or because the court would have decided the case differently. See Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002).

To be entitled to disability benefits, a claimant must prove he is unable to perform any substantial gainful activity due to a medically determinable physical or mental impairment which would either result in death or which has lasted or could be expected to last for at least 12 months. See 42 U.S.C. §§ 423(a)(1)(D), (d)(1)(A), 1382c(a)(3)(A). A five-step regulatory framework governs the evaluation of disability in general. See 20 C.F.R. §§ 404.1520, 416.920; see also Bowen v. Yuckert, 482 U.S. 137, 140-41 (1987) (describing the five-step process); Fastner v. Barnhart, 324 F.3d 981, 983-84 (8th Cir. 2003). If the Commissioner finds that a claimant is not disabled at any step, a determination or decision is made and the next step is not reached. 20 C.F.R. § 404.1520(a)(4).

### 3. The ALJ's Decision

In his decision denying benefits, the ALJ found that the medical evidence established that plaintiff has bilateral otosclerosis, degenerative joint disease, and peripheral vascular disease, which are considered severe. However, these impairments, either singly or in combination, are not medically equal to one in the Commissioner's Listing of Disabling Impairments. (Tr. 13-14, 19.)

The ALJ determined that plaintiff's subjective complaints were not fully credible, that he had the Residual Functional Capacity to work except for lifting more than 20 pounds occasionally or more than ten pounds frequently; or to climb, balance, stoop, kneel, crouch, or crawl more than occasionally; or to be exposed to concentrated noise. (Tr. 19.)

The ALJ found that plaintiff cannot perform his past relevant work as a fast food cook, a maintenance laborer for a fast food restaurant, a building maintenance laborer, a hardware store stocker and sales clerk, or a factory preventative maintenance mechanic. (Id.)

Nevertheless, the ALJ found that plaintiff can perform a wide range of light work, was then 53 years old (approaching advanced age), had a high school education and an Associate Degree in radio and television repair. Given these facts, the ALJ concluded that plaintiff was not and is not disabled. (Tr. 19-20.)

**4. Plaintiff's Grounds for Relief and Discussion**

Plaintiff argues that the decision of the ALJ is not supported by substantial evidence. More specifically, he argues that the ALJ erred (1) when determining plaintiff's residual functional capacity (RFC) because he found that plaintiff retained the ability to perform the full range of light work; (2) in failing to consider properly plaintiff's subjective complaints under Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984); and (3) in not obtaining the testimony of a vocational expert (VE), when the record contained evidence that plaintiff suffered from non-exertional impairments.

a. Ground 1: Plaintiff's Residual Functional Capacity

The RFC is "the most [a claimant] can still do despite" his physical or mental limitations. 20 C.F.R. § 404.1545(a). When determining plaintiff's RFC, the ALJ must consider all relevant evidence but ultimately, the determination of the plaintiff's RFC is a medical question. Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). As such, the determination of plaintiff's ability to function in the workplace must be based on some medical evidence. Id.; see also Nevland v. Apfel, 204 F.3d 853, 858 (8th Cir. 2000).

The ALJ found plaintiff's impairments limited him to
> perform the physical exertion requirements of work except for lifting over twenty pounds occasionally and ten pounds frequently, more than occasionally climbing, balancing, stooping, kneeling, crouching, or crawling, and he should avoid concentrated exposure to noise.

(Tr. 19.)

Plaintiff argues that the ALJ failed to include his inability to reach overhead in the RFC. Indeed Chad Byrd, M.D., a consulting rheumatologist who examined plaintiff on August 11, 2004, found that plaintiff had early rotator cuff tendinitis in the shoulders, which may limit plaintiff's ability to work with his hands over his head.[1] (Tr. 280.)

Also, on October 2, 2003, Loreta Mendoza, M.D., performed a consultative general examination of plaintiff and reviewed his medical records. She noted he was a little overweight for his height and did not appear in any acute distress. His speech was normal. She noted his hearing was normal, and that the conversation with hearing aids was adequate. His lungs were clear. He had signs of arthritis in his upper extremities, and there was no sign of ankle edema. He had full flexion in his knees. He had very dry skin. She diagnosed him with atherosclerosis of the ears, cervical strain, tendinitis of the shoulders, no problems with his knees, and varicositis[2] in the legs. (Tr. 119-127.)

Even with this medical record, the ALJ did not err in not expressly describing a consideration of plaintiff's limitation regarding overhead work. Light work does not, by its definition, require that plaintiff be able to reach overhead. 20 C.F.R. 404.1569a(c)(vi).[3] Dr. Byrd did not

---

[1] Plaintiff reported to Dr. Byrd that he did electrical work and that it has been difficult working with his hands over his head. (Tr. 276.)

[2] Varicositis is a condition where varicose veins, enlarged, twisted veins, rise near the surface of the skin. This commonly develops in the legs and ankles. Webmd.com/hw/skin_and_beauty?hw113840.asp. (Last visited August 7, 2006.)

[3] Light work is defined as:

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine

indicate that this limitation would preclude all work, only that work as an electrician. (Tr. 276.)

No treating physician ever imposed any work restrictions on plaintiff. In fact, at least one doctor gave him information on employment during his hospital stay, indicating that he could work.[4] There are no objective medical tests that support a condition in his back, neck, or shoulders that causes disabling pain or an inability to work. For these reasons, substantial medical evidence on the record supports the ALJ's findings regarding plaintiff's RFC.

## Ground 2: Plaintiff's Subjective Complaints

---

dexterity or inability to sit for long periods of time.
20 C.F.R. § 404.1567(b).

[4]On November 28, 2003, a chest x-ray showed plaintiff had acute bronchitis. Plaintiff complained of shortness of breath. He was hospitalized on November 28. He was prescribed Fluticasone, Montelukast, Selenium sulfide, acetaminophen, cyclobenzaprine, Gabapentin, Simvastatin, and sildenafil. A December 1, 2003 x-ray of the chest showed that his lungs were clear. His heart was normal. He was discharged December 2, 2003. (Tr. 133-42.)

On November 30, 2003, before the December 2 discharge, a counselor performed a physical residual functional capacity assessment on plaintiff. He found that plaintiff could occasionally lift 20 pounds, and frequently lift 10 pounds. He could stand for six hours in an eight-hour workday, and sit for six hours in an eight-hour workday. He was unlimited in his ability to lift or carry. He found that plaintiff could occasionally climb, balance, stoop, kneel, crouch, and crawl. He had no manipulative or visual limitations, but was limited in his ability to hear. He should avoid concentrated exposure to noise. (Tr. 87-94.)

On December 1, 2003, while in the hospital, plaintiff discussed his diet with dietician Nochol Hollerich. He reported having a good appetite. He was currently out of work but looking for a job, and worked out at a gym. He was told to eat a low cholesterol diet. (Tr. 169.)

On December 2, 2003, plaintiff was given information about employment from a physician. It was noted he was trying to obtain SSI benefits. He had no income and received $130 a month in food stamps. (Tr. 163.)

-5-

Plaintiff argues that the ALJ's determination of his credibility was not in accord with the factors stated in Polaski, 739 F.2d at 1322. The court disagrees.

"The adjudicator must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians . . . ." Polaski, 739 F.2d at 1322. Factors to be considered include the claimant's daily activities, the duration, frequency, and intensity of the pain, any precipitating factors, whether the claimant has been taking pain medication and the dose, and functional restrictions. Id.; Depover v. Barnhart, 349 F.3d 563, 566 (8th Cir. 2003). The ALJ may not discredit subjective complaints based solely on personal observation. Polaski, 739 F.2d at 1322. "Subjective complaints may be discounted if there are inconsistencies in the record as a whole." Singh v. Apfel, 222 F.3d 448, 452 (8th Cir. 2000). "An ALJ who rejects such complaints must make an express credibility determination explaining the reasons for discrediting the complaints." Singh, 222 F.3d at 452.

Plaintiff argues that the ALJ focused too much on the lack of medical evidence when discrediting his subjective complaints. "Although the ALJ may not reject subjective complaints solely because of a lack of objective medical evidence on the record as a whole, the absence of objective medical evidence which supports the degree of severity is a factor to be considered by the ALJ." Barrett v. Shalala, 38 F.3d 1019, 1022 (8th Cir. 1994).

The opinion of the ALJ discusses plaintiff's daily activities,[5] the lack of medical evidence substantiating his complaints, personal observations, and the plaintiff's prior work history. (Tr. 14, 16, 17.) The ALJ focused on the lack of medical evidence supporting plaintiff's complaints. The ALJ noted that no doctor had limited plaintiff, he had not required severe hospitalization or surgery for his pain, there were no objective medical tests that showed conditions that would cause disabling pain, and that plaintiff had worked during both his hearing loss and ankle ulcers. Further, Dr. Mendoza noted plaintiff could hear during the appointment even when she turned around and spoke indirectly, and plaintiff had no trouble hearing at the hearing. Plaintiff also had been looking for work, and indicated that the only reason he was not working was because he had not been hired.

The ALJ noted plaintiff did small chores for his nephew such as mowing the lawn and electrical jobs. He walked five blocks to the grocery store, and felt he could walk eight blocks at a time. Plaintiff was able to carry 10 to 15 pounds of groceries home. He visits neighbors. He vacuums. While the ability to do light housework should not preclude a finding of disability, the level of activity carried out by plaintiff is much more than light housework. See Easter v. Bowen, 867 F.2d 1128, 1130 (8th Cir. 1989). Further, plaintiff was terminated from his prior job not because of his disability, but because he took sick leave because he had the flu. (Tr. 108.) Weber v. Barnhart, 348 F.3d 723, 725 (8th Cir. 2003) (left job due to lack of transportation, not inability to work).

---

[5]The ALJ noted:

> The claimant also testified that he has been looking for work for a year and a half but has not been able to find a job. He expressed the opinion that the reason he is not hired is because of his age and hearing problems. He spends his day performing small chores for his nephew such as cutting the grass or small electric jobs. Vacuuming does not bother his back too much. He walks five blocks to the grocery store. He can carry ten to fifteen pounds of groceries home from the store at a time. He also spends time visiting with his neighbors. The claimant testified that he used to fish, but that he has not done that for two years because he cannot sit in one position for any length of time.

(Tr. 13.)

Infrequent doctor visits can indicate that the plaintiff's complaints are not credible. See Buckler v. Bowen, 860 F.2d 308, 311 (8th Cir. 1988); Benskin v. Bowen, 830 F.2d 878, 884 (8th Cir. 1987). Further, "a failure to seek treatment may indicate the relative seriousness of a medical problem." Tate v. Apfel, 167 F.3d 1191, 1197 (8th Cir. 1999) (quoting Shannon v. Chater, 54 F.3d 484, 486 (8th Cir. 1995)). Plaintiff never received ongoing aggressive treatment for his pain, and there is no indication from the record he was persistently taking strong pain medication. He wears hearing aids for his hearing loss and the medical evidence shows that the aids improved his hearing. The ALJ did not err when finding that plaintiff's subjective complaints were not credible.

### Ground 3: Nonexertional Impairments

Plaintiff argues that the ALJ erred in not including nonexertional impairments in the RFC, and that vocational expert testimony was required.

Nonexertional limitations are any limitations besides strength that reduce a person's ability to work. Sanders v. Sullivan, 983 F.2d 822, 823 (8th Cir. 1992); 20 C.F.R. § 404.1569a(c)(1)(vi) and (2).[6] "[I]f the claimant's nonexertional impairments diminish his or her residual

---

[6] Nonexertional impairments are defined as:
(c) Nonexertional limitations.

(1) When the limitations and restrictions imposed by your impairment(s) and related symptoms, such as pain, affect only your ability to meet the demands of jobs other than the strength demands, we consider that you have only nonexertional limitations or restrictions. Some examples of nonexertional limitations or restrictions include the following:

* * *

(iv) You have difficulty in seeing or hearing;

(v) You have difficulty tolerating some physical feature(s) of certain work settings, e.g., you cannot tolerate dust or fumes; or

(vi) You have difficulty performing the manipulative or postural functions of some work such as reaching, handling, stooping, climbing, crawling, or crouching.

20 C.F.R. § 404.1569a(c).

functional capacity to perform the full range of activities listed in the [Medical-Vocational] Guidelines, the Secretary must produce expert vocational testimony or other similar evidence to establish that there are jobs available in the national economy for a person with the claimant's characteristics." Sanders, 983 F.2d at 823. "Resort to the [Medical-Vocational] Guidelines is permissible even though there is a nonexertional impairment, provided that the ALJ finds, and the record supports the finding, that the nonexertional impairment does not significantly diminish the claimant's residual functional capacity to perform the full range of activities listed in the Guidelines." Harris v. Shalala, 45 F.3d 1190, 1194 (8th Cir. 1995); McGeorge v. Barnhart, 321 F.3d 766, 768-69 (8th Cir. 2003).

Here, the ALJ found that the plaintiff's subjective complaints and the medical evidence did not support nonexertional impairments that significantly limited plaintiff's RFC. Plaintiff's pain was not disabling, and hearing aids improved his ability to hear. Therefore, the ALJ's use of the guidelines in lieu of VE testimony was not erroneous.

For these reasons, the decision of the Commissioner of Social Security is affirmed. An order in accordance with this memorandum is filed herewith.

_____
**DAVID D. NOCE**
**UNITED STATES MAGISTRATE JUDGE**

Signed on September 5, 2006.